UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>       Plaintiff,<br>  v.<br>DANIEL R. DOWNES, *et al*.,<br>       Defendants. | Case No. 2:22-cv-00894-MMD-BNW<br><br>ORDER |

**I.**    **SUMMARY**

  Plaintiff Metropolitan Life Insurance Company ("MetLife") filed this interpleader action to resolve conflicting claims to the life insurance benefits of decedent Daniel Ross Downes ("Decedent"). (ECF No. 1 ("Complaint").) The conflicting claims reflect a dispute between two groups of named interpleader defendants: Decedent's former wife and biological children—Defendants Karen Macaulay, David Downes, Daniel Downes, and Colleen Downes ("Macaulay Defendants")—and Decedent's wife at the time of his death and step-son—Defendants Christa Shedd and Bradley Randall ("Shedd Defendants"). (*Id.*)

  Before the Court are Macaulay Defendants' motion for judicial notice (ECF No. 21)[1], Shedd Defendants' request for judicial notice (ECF No. 29)[2], and Macaulay Defendants' motion for summary judgment (ECF No. 21)[3]. As explained below, the Court

---

[1]Shedd Defendants opposed the motion for judicial notice (ECF No. 28) and Macaulay Defendants replied (ECF No. 30).

[2]Macaulay Defendants opposed the request for judicial notice (ECF No. 32) and Shedd Defendants replied (ECF No. 33).

[3]Shedd Defendants opposed the motion for summary judgment (ECF No. 27) and Macaulay Defendants replied (ECF No. 31).

will grant Macaulay Defendants' motion for judicial notice (ECF No. 21) as to the two Nevada state court orders at issue but will not take notice of additional facts regarding their content. The Court will also grant Shedd Defendants' request for judicial notice (ECF No. 29) as to exhibited state court orders (ECF Nos. 29-4, 29-5, 29-6, 29-7, 29-8, 29-9, 29-10) but will deny their request as to MetLife records (ECF Nos. 29-1, 29-2, 29-3). Finally, the Court will partially grant Macaulay Defendants' motion for summary judgment (ECF No. 27) as to the undisputed proceeds of Decedent's basic life insurance plan. However, the Court will deny summary judgment as to the disputed proceeds of Decedent's supplemental life insurance plan.

## II.     BACKGROUND[4]

Decedent Daniel Downes was an employee of Matson, Inc. from February 2010 until his death in January 2022. (ECF Nos. 1, 22 at 2, 27.) Matson funded a plan of life insurance coverage for its employees through a policy of group life insurance purchased from Plaintiff MetLife under Policy Number 1606880-G. (ECF No. 27-3 at 4.) The MetLife policy provides numerous options for insurance coverage, including basic/employee life Insurance ("Basic/Employee Life") and, *inter alia*, supplemental life insurance ("Supplemental Life"), dependent life insurance, and accidental death and dismemberment insurance. (ECF No. 27-5.) Decedent maintained an individual MetLife insurance plan, Employee ID Policy Number 100327, throughout his employment at Matson. (ECF No. 22 at 2.)

### A.     Divorce from Defendant Karen Macaulay

At the time he began his employment at Matson, Decedent was married to Karen Macaulay ("Karen"). (*Id.* at 3.) Decedent and Karen have three now-adult children: Defendants David Downes, Daniel Downes, and Colleen Downes. (*Id.*) Decedent and Karen divorced in November 2010 and a stipulated decree of divorce was filed in the

---

[4]The following facts are undisputed unless otherwise noted.

Eighth Judicial District Court, Family Division on November 17, 2010 in *Daniel Downes v. Karen Downes*, State of Nevada, District Court Case No. D-10-431684-D ("Divorce Action"). (*Id.* at 15-32 ("Divorce Decree").) The Divorce Decree explicitly states that "Daniel [Decedent] shall maintain his current life insurance policy and the children shall be the beneficiaries with Karen as trustee." (*Id.* at 30.) The Decree further states that "Daniel may obtain any additional policies as he desires and name any person or entity as the beneficiary thereof" (*Id.*) No portion of the Divorce Decree requires Decedent to maintain a specific benefit amount.[5] (*Id.* at 15-32.)

At the time of the Divorce Decree, Decedent maintained a Basic/Employee Life policy through Matson, and the parties present no evidence that he was then enrolled in a Supplemental Life policy. (ECF Nos. 27-6 at 2, 31-3.) Eligible Matson employees under its policy group receive Basic/Employee Life coverage on a non-contributory basis. (ECF Nos. 27-3 at 3, 27-5 at 40.) Supplemental Life coverage is contributory: it requires an eligible employee to pay an additional premium. (*Id.*)

On November 19, 2010, shortly after his divorce from Karen, Decedent completed a beneficiary designation naming his three biological children as equal primary beneficiaries to his life insurance proceeds, and naming Karen as the contingent beneficiary. (ECF No. 27-6.) By early 2014, uncontested evidence suggests that Decedent enrolled in a Supplemental Life plan and continued to list his biological children as beneficiaries. (ECF No. 31-3 at 9, 15.)

B.  **Marriage to Defendant Christa Shedd**

In August 2015, Decedent married Christa Shedd ("Christa"). (ECF No. 22 at 3.) Bradley Randall ("Bradley") is Shedd's son from a previous marriage and Decedent's

---

[5] In their reply to Shedd Defendants' opposition, Macaulay Defendants take the position that Decedent agreed at the time of his divorce from Karen to maintain a monetary level of life insurance coverage at four times his annual salary and that Karen paid valuable consideration for this promise. (ECF Nos. 27-7 at 4, 31-2.)

step-son. (*Id.*) By 2019, Daniel had added both Christa and Bradley as beneficiaries to his Basic and Supplemental Life coverage (ECF Nos. 31-3 at 11-12, 19, 27-1.)

Contesting Shedd Defendants' status as proper beneficiaries, Karen filed a motion to show cause on February 19, 2019, asking the family court to enforce the Divorce Decree. (ECF No. 31-7 at 43.) The Court issued an order requiring Decedent to show cause as to why he should not be held in contempt for "failure to obey this court's order entered on November 17, 2010 [Divorce Decree] by failing to have the party's children as beneficiaries on his work life insurance and the Defendant as trustee on or about October 17, 2016." (ECF No. 29-5 ("February 2019 Order to Show Cause").) On March 26, 2019, the state district court held a hearing to address Karen's February motion and subsequently issued a written order summarizing the rulings made at the hearing. (ECF No. 22 at 46-49 ("March 2019 Hearing Order").) The March 2019 Hearing Order requires that "Father [Decedent] shall remove his wife [Christa] and step-child [Bradley] from the life insurance policy at issue" (*Id.* at 48.) The order further notes that "Father shall provide to Mother [Karen] a letter from the insurance policy provider within 60 days, at least for this year, that Father's wife and step-child have been removed, and he is not to change the policy." (*Id.*)

While the exact timeline is ambiguous, the parties agree that at some time after the hearing, Decedent removed Christa and Bradley from the Basic Life policy. (ECF Nos. 22 at 4, 27 at 8.) Decedent appears to have left Christa and Bradley as beneficiaries to his Supplemental Life policy, as demonstrated in employee benefit summary reports from 2019. (ECF No. 31-3 at 20-22.) On June 14, 2019, Karen filed another motion for an order to show cause, and the Court issued an order (ECF No. 29-6 ("July 2019 Order to Show Cause")) requiring Decedent to demonstrate why he "should not be held in Contempt of Court for: Failure to obey this Court's order entered on May 21, 2019 by failing to remove the ex-wife and stepchild from the insurance policy at issue, failing to provide proof of removing the wife and stepchild from the insurance policy . . . [and] [m]aking changes to

the insurance policy at issue in violation of the court order." (ECF Nos. 27-9 at 2-3, 31-7 at 47.) Decedent opposed the July 2019 Order to Show Cause and filed supporting exhibits.[6] (ECF No. 31-7 at 47-48.) At this time, Decedent continued to list Shedd as the primary beneficiary to his Supplemental Life policy. (ECF No. 31-3 at 23-34.)

On July 15, 2019, before the scheduled show-cause hearing, Judge Mathew Harter issued a minute order in the divorce action, stating: "This Court informed Defendant [Karen] at a prior hearing that in reality, it is this Court's opinion her children would be arguably protected in that if Plaintiff did unfortunately pass, she has the Decree of Divorce to submit if the issue was ever contested in probate" but that "[regardless], with the Exhibits that Plaintiff has filed on 7/11/2019, it shows that he is now in compliance and any contempt would be considered purged." (ECF No. 27-10 at 2 ("July 2019 Minute Order").) In January 2020, Decedent completed an electronic beneficiary designation naming his two sons from his previous marriage as equal primary beneficiaries for Basic Life and naming Christa as the sole beneficiary for Supplemental Life, with his two biological sons as contingent beneficiaries.[7] (ECF No. 31-3 at 23-34.)

### C. Family Court Litigation Following Decedent's Death

Decedent died on January 27, 2022. (ECF No. 22 at 5.) Both Macaulay Defendants and Shedd Defendants made further state court filings regarding the designation of beneficiaries and the content of the family court's minute orders, including after Decedent's death. (ECF No. 31-7.) In March 2022, Karen filed a "Motion for Clarification of May 21, 2019 Order and for Joinder of Necessary Parties," asking the family court to clarify that the referenced life insurance policy in the court's previous order included both

---

[6]Shedd Defendants maintain that these exhibits show Decedent's updated beneficiary designations, listing only his biological children as primary beneficiaries on his Basic Life Policy. (ECF Nos. 27-1, 31-3 at 20-22.)

[7]In November 2019, on Karen's motion, Decedent consented to the termination of parental rights over his daughter, formalized on January 7, 2020. (ECF No. 27-7 at 4.) Although she is a named interpleader defendant in this action, Colleen Downes does not make any claims to the proceeds of Decedent's insurance policy. (*Id.*)

Basic Life and Supplemental Life, also seeking to join Christa and Bradley in the Divorce Action. (ECF Nos. 1 at 5, 27-11 at 2, 31-7 at 54.) The family court issued a minute order (ECF No. 29-8 ("March 2022 Minute Order")) closing the Action and finding that the Divorce Action was extinguished upon Decedent's death. (ECF Nos. 1 at 5, 27-11.) The family court also ordered Karen's counsel to prepare a written order adopting the findings of the July 2019 Minute Order. A written order has not yet been filed. (ECF Nos. 27 at 16, 27-1.)

The Divorce Action between Decedent and Karen has been sealed since February 2021, upon Karen's ex parte application. (ECF No. 27-12 at 2.) The family court denied Christa's emergency motion to unseal the Action in April 2023. (ECF No. 31-7 at 56, 58-59.) As a result, this Court does not have access to sealed filings in the Divorce Action.

### D.  Interpleader Action

Macaulay Defendants and Shedd Defendants filed conflicting claims to MetLife for the proceeds of Decedent's Supplemental Life insurance proceeds, with David and Daniel Downes submitting claims for the entirety of the sum. (ECF No. 1.) On June 3, 2022, Plaintiff MetLife filed this interpleader action, requesting that the Court determine the rightful beneficiaries. (ECF No. 1.) The benefits of Decedent's life insurance policy total $792,000. (ECF No. 1 at 1.) The Basic Life portion totals $542,000 and the Supplemental Life portion totals $250,000. (ECF No. 1 at 4.) In August 2023, the Court issued an order granting the parties' amended stipulation to complete interpleader. (ECF No. 46.)

Macaulay Defendants filed a motion for judicial notice asking the Court to take notice of the Divorce Decree and the March 2019 Hearing Order in the Divorce Action. (ECF No. 21.) Macaulay Defendants then moved for summary judgment on the basis of *res judicata* and issue preclusion, arguing that these two state court orders have preclusive effect. (ECF No. 22.) Shedd Defendants subsequently requested that the Court take judicial notice of ten exhibits attached to Macaulay Defendants' motions and Shedd Defendants' respective oppositions. (ECF No. 29.)

## III. DISCUSSION

The Court addresses Macaulay and Shedd Defendants' respective requests for judicial notice (ECF Nos. 21, 29) before turning to Macaulay Defendants' motion for summary judgment (ECF No. 22).

### A. Judicial Notice

As detailed below, reviewing both Macaulay Defendants' and Shedd Defendants' requests, the Court takes judicial notice of eight family court records from the Divorce Action. These include (1) the Divorce Decree (ECF Nos. 21 at 10-39, 29-4); (2) the March 2019 Hearing Order (ECF No. 21 at 41-44); (3) the February 2019 Order to Show Cause (ECF No. 29-5); (4) the July 2019 Order to Show Cause (ECF No. 29-6); (5) the July 2019 Minute Order (ECF No. 29-7); (6) the March 2022 Minute Order (ECF No. 29-8); (7) the February 2021 order sealing Divorce Action file (ECF No. 29-9 ("Order Sealing File")); and (8) the Divorce Action court record summary (ECF No. 29-10).

#### 1. Macaulay Defendants' Motion for Judicial Notice (ECF No. 21)

Macaulay Defendants ask the Court to take judicial notice of two orders in the Divorce Action. (ECF No. 21.) First, they request judicial notice of the 2010 Divorce Decree between Decedent and Karen. (*Id.*) Here, they also ask the Court to take notice of the fact that the "Stipulated Decree of Divorce constitutes the negotiated, bargained-for, and stipulated agreement between Deceased and Karen regarding the terms of the divorce settlement." (*Id.* at 6.) Second, they request judicial notice of the March 2019 Hearing Order. (*Id.* at 5.) They also request that the Court notice the fact that "the state district court entered the [March 2019 Hearing] Order after a hearing on the matter, and the Order specifically addresses the issues raised in 'Defendant's [Karen's] Motion for an Order to Enforce and/or for an order to Show Cause Regarding Contempt' as it is noted on the Order." (*Id.* at 6-7.)

A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined

from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). In particular, a federal court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *United States v. Southern California Edison Co.*, 300 F.Supp.2d 964, 973 (E.D. Cal. 2004) (noting that federal Courts may take notice of other courts' proceedings when those proceedings have a "direct relation" to the matters at issue). *But see Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) ("Taking judicial notice of findings of fact from another case exceeds the limits of Rule 201.").

Shedd Defendants raise no objection to judicial notice of the existence of the Divorce Decree and the March 2019 Hearing Order—as they have themselves requested that the Court take notice of the Divorce Decree. (ECF Nos. 28, 29.) Both the Divorce Decree and the March 2019 Hearing Order are court filings and public records directly related to the matters at issue. *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6; *Southern California Edison Co.*, 300 F.Supp. at 973. The Court thus takes judicial notice of (1) the certified, stipulated Divorce Decree dissolving the marriage or Daniel R. Downes and Karen Macaulay on November 17, 2010, according to the terms contained therein; and (2) the certified March 2019 Hearing Order.

The Court notes, however, that it declines to take judicial notice of any further information about the meaning of these documents, such as the fact that the Divorce Decree constitutes a "negotiated, bargained-for, and stipulated agreement." (ECF No. 21 at 6.) To the extent that such a fact implicates the factual circumstances surrounding the creation of the Divorce Decree, the Court finds it inappropriate to take a position. Alternatively, to the extent that the Decree is "by its very definition" the result of negotiation, as Macaulay Defendants argue, judicial notice of such a fact is redundant. (ECF No. 30 at 7.) The Court also declines to take specific notice of "the fact that the Order to from March 26, 2019 Hearing addressed the issues raised in Karen Macaulay's 'Motion for an Order to Enforce and/or for an Order to Show Cause Regarding Contempt.'"

(ECF No. 30 at 7.) The referenced motion to enforce and/or show cause is not itself available for inspection by the Court. (ECF No. 31-7 at 56, 58-59.) The Court will not affirm that the March 2019 Hearing Order "addresses the issues" in a document it has not reviewed. *See* Fed. R. Evid. 201(c) (stating that a court must take judicial notice only when it is "supplied with the necessary information").

### 2. Shedd Defendants' Request for Judicial Notice (ECF No. 29)

Shedd Defendants request that the Court take judicial notice of ten documents referenced in Macaulay Defendants' motion for summary judgment, their opposition to that motion, and other filings in this Action: (1) Matson Inc.'s benefit summary (ECF No. 29-1 ("Benefit Summary")); (2) Decedent's beneficiary designation form dated November 19, 2010 (ECF No. 29-2 ("2010 Beneficiary Designation Form")); (3) MetLife's group policy packet setting out terms and MetLife's certificate of coverage (ECF No. 29-3 ("MetLife Term Summary")); (4) the Divorce Decree (ECF No. 29-4); (5) the February 2019 Order to Show Cause (ECF No. 29-5); (6) the July 2019 Order to Show Cause (ECF No. 29-6); (7) the July 2019 Minute Order (ECF No. 29-7); (8) the March 2022 Minute Order (ECF No. 29-8); (9) the Order Sealing File (ECF No. 29-9); and (10) the Court Record in Divorce Action summary (ECF No. 29-10). (ECF No. 29.)

Macaulay Defendants do not object to judicial notice of five records identified by Shedd Defendants. These include the Divorce Decree, the February 2019 Order to Show Cause, the July 2019 Order to Show Cause, the Order Sealing File, and the Divorce Action court record summary (ECF Nos. 29-4, 29-5, 29-6, 29-9, 29-10). (ECF No. 32.) The Court finds it appropriate to take notice of these five public court documents.

Macaulay Defendants object to Shedd Defendants' other five requests. First, they object to judicial notice of the Benefit Summary, 2010 Beneficiary Designation Form, and MetLife Terms Summary (ECF Nos. 29-1, 29-2, 29-3). (ECF No. 32 at 4-5.) The Court agrees and declines to notice these documents because they are not public records, not publicly available and not authenticated as to their veracity, and facts to be noticed within

them are not identified with adequate specificity. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F.Supp.3d 1110, 1126 (C.D. Cal. 2015) (taking judicial notice of the existence of public filings, but not their factual content); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A]ccuracy is only part of the inquiry under Rule 201(b)" because "[a] court must also consider—and identify—which fact or facts it is noticing . . . . Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").[8]

Next, Macaulay Defendants object to judicial notice of the two minute orders (ECF Nos. 29-7, 29-8) on the basis that they are part of a sealed record in the Divorce Action and that as non-parties, Shedd Defendants must first ask the family court to unseal the files. (ECF No. 32 at 3.) *See* NRS § 125.110. The Court agrees with Shedd Defendants that the minute orders are appropriate for judicial notice and not barred from such notice merely because the Divorce Action is sealed. (ECF No. 33 at 4-5.) Under NRS § 125.110(1)(b), in divorce actions other than those in which a defendant fails to answer a complaint, "the pleadings, the findings of the court, any order made on motion as provided in Nevada Rules of Civil Procedure, and the judgement" are "open to public inspection in the clerk's office." Other records, including exhibits and testimony, may be sealed. *See* NRS § 125.110(2). *See also Johanson v. Eighth Jud. Dist. Ct. of State of Nev.*, 182 P.3d 94, 97 (Nev. 2008) (finding that "NRS § 125.110 must be strictly construed" and that "the district court has no discretion in divorce cases to seal pleadings, court findings, orders that resolve motions, or judgments"). As Shedd Defendants emphasize, there are numerous unsealed orders and stipulations available to the public via download in the Divorce Action, including the two minute orders at issue here—which constitute "court

---

[8]Shedd Defendants argue that these documents are incorporated by reference into the Complaint—and that Macaulay Defendants have themselves cited to the documents, produced by MetLife during discovery. (ECF No. 33 at 8-9.) The Court notes that it need not take judicial notice of these documents in order to consider their content at this stage of the litigation for summary judgment purposes.

findings." (ECF No. 33 at 4-5.) The Court thus takes judicial notice of the July 2019 Minute Order and the March 2022 Minute Order (ECF Nos. 29-7, 29-8).[9]

### B. Summary Judgment

Macaulay Defendants move for summary judgment entitling them to the entire $792,000 in proceeds from both Decedent's Basic Life and Supplemental Life insurance benefits. (ECF No. 22.) Shedd Defendants contend that while they make no claims to Basic Life proceeds, Macaulay Defendants misrepresent the sealed state court record as to the Supplemental Life proceeds. (ECF No. 27.)

The Court addresses the Motion as to Basic Life and Supplemental Life proceeds separately, drawing all inferences in Shedd Defendants' favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (emphasizing that summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (noting that in evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party).

#### 1. Basic Life

Shedd Defendants concede that "[n]either Christa nor Bradley have made a claim on Employee Life/Basic Life insurance policy which has a benefit of $542,000," and that Macaulay Defendants are entitled to these proceeds. (ECF No. 27 at 7.) Thus, because there is no factual dispute as to the parties entitled to the Basic Life insurance proceeds, the Court grants partial summary judgment for Macaulay Defendants as to the $542,000

---

[9]The Court is not oblivious to the fact that Macaulay Defendants seek to selectively apply their power as parties to the sealed Divorce Action. They ask the Court to take judicial notice of some Divorce Action orders—namely, the Divorce Decree and the March 2019 Hearing Order—while they seek to prevent the Court from considering other orders from the same action. Especially given that they move for summary judgment primarily on the basis of *res judicata* and issue preclusion, discussed below, Macaulay Defendants may not cherry pick their ideal record only to argue that the resulting partial record is unambiguous.

in benefits from the Basic Life portion of Decedent's policy. (ECF No. 1 at 3-5.) The Court will release this Basic Life benefit sum to Defendants Daniel Downes and David Downes according to their properly-made claims.[10]

### 2. Supplemental Life

The Court next turns to the crux of this action—the $250,000 in remaining proceeds from Decedent's Supplemental Life policy. Here, Macaulay Defendants argue that the Nevada family court already adjudicated the issue now before the Court in their favor in the course of the Divorce Action. (ECF No. 22 at 7-11.) As a result, they say, they are entitled to all funds under principles of *res judicata* and issue preclusion. (*Id.*) Macaulay Defendants point to only two exhibits—the Divorce Decree and the March 2019 Hearing Order—as state court orders with preclusive effect. They argue that the Divorce Decree required that Decedent retain his children as beneficiaries to the entirety of his MetLife plan proceeds and that the state court affirmed this agreement in the March 2019 Hearing Order. (*Id.*) The Court disagrees, finding that genuine issues of material fact remain. *See Celotex*, 477 U.S. at 330.

In Nevada, issue preclusion is a corollary to the doctrine of *res judicata* and applies to prevent relitigation of issues already decided in a previous suit between the parties. *See Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 916 (Nev. 2014). A court is only subject to the limits of issue preclusion when (1) the issue decided in the prior litigation is identical to the issue presented in the current action; (2) the initial ruling was final and on the merits; (3) the party against whom the judgment is asserted was a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *See id.*

---

[10]MetLife deposited Decedent's full benefit sum, plus interest and less fees, in an interest-bearing account administered by the United States District Court following an amended stipulation to complete interpleader (ECF No. 45). (ECF Nos. 46, 47, 48.) Decedent's daughter, Defendant Colleen Downs, has not made any claims to MetLife insurance proceeds. (ECF No. 27-7 at 4.)

Macaulay Defendants fail to demonstrate issue preclusion mandates summary judgment in their favor as a result of the Divorce Decree and the March 2019 Hearing Order. To start, the orders contain substantial ambiguity. The Court is unconvinced that they address an identical issue to the one now before the Court—the proper categorization of Supplemental Life—or that such an issue was actually or necessarily litigated in 2010 or in 2019. *See id.* The Divorce Decree requires Decedent to "maintain *his current life insurance policy*" while permitting him to "obtain any *additional policies* as he desires and name any person or entity as beneficiaries thereof." (ECF No. 22 at 30 (emphasis added).) Whether Supplemental Life is best viewed as part of the then-"current" policy in 2010, thus mandating that its proceeds go to Decedent's children, or as an "additional policy" permitting Decedent to select Shedd Defendants as beneficiaries, is not apparent through the Divorce Decree text itself. The March 2019 Hearing Order, in turn, finds Decedent out of compliance with the Divorce Decree and requires him to remove Christa and Bradley "from the life insurance *policy at issue*." (*Id.* at 48 (emphasis added).) But again, the March 2019 Hearing Order itself does not conclusively resolve whether the "policy at issue" includes only the Basic Life policy, or also the Supplemental Life policy.

Moreover, the March 2019 Hearing Order is a written order summarizing a family court proceeding. While the oral transcript of the proceeding itself might clarify the district court's intended meaning of "policy at issue," the Court is unable to review the transcript because the Divorce Action has been sealed and its disclosure is subject to the discretion of Macaulay Defendants—the movants now asserting that the record is unambiguous. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (noting that the moving party must carry the burden of production).

Additional circumstances surrounding the Divorce Action further indicate ongoing and material factual disputes regarding the allowable beneficiaries to Supplemental Life. Importantly, Shedd Defendants have produced the July 2019 Minute Order, in which the

family court finds Decedent in compliance with the Divorce Decree. (ECF No. 27-10.) Shedd Defendants present evidence that in July 2019, Decedent had removed them as beneficiaries to his Basic Life coverage, while they remained named beneficiaries to his Supplemental Life coverage. (ECF Nos. 27 at 8, 31-3 at 20-22.) This suggests, counter to Macaulay Defendants' position, that the family court did not conclusively view Supplemental Life as part of the "policy at issue" in the March 2019 Hearing Order. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995) (noting that where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate).

Macaulay Defendants also highlight additional factual issues—beyond the scope of the *res judicata* basis for their original Motion—in their reply, where they emphasize that "Supplemental Life" did not exist as part of Matson's package of MetLife policy options at the time of the Divorce Decree in 2010. (ECF No. 31 at 3-4.) They argue that Decedent's enrollment in Supplemental Life followed Matson's separation from its parent company and coinciding shift in policy options in 2014. (ECF Nos. 31 at 3-4, 31-2, 31-3, 31-4.) Decedent's employee benefit summary reports also show changes in the coverage elections available when comparing reports from 2010 and 2014, with Supplemental Life not apparent as an option in the 2010 election year and its effective date subsequently listed as April 1, 2014.[11] (ECF No. 31-3.) Macaulay Defendants take the position that the new MetLife structure reduced Basic Life coverage to two times Decedent's annual salary, and Decedent enrolled in Supplemental Life to support his promise to Karen—supported by consideration in the form of Matson stocks—to keep coverage for his children at four times his annual salary. (ECF No. 31 at 7-9.) To the extent that "Supplemental Life" was not a selection available in 2010 and became an option in 2014, this only amplifies the uncertainty about whether Supplemental Life can rightly be

---

[11]Matson's life insurance policy election terminology has shifted over the period at issue. (ECF No. 31-3.) In 2010, employee benefit election documents show "Life Coverage" as an available selection. (*Id.*) In 2014, the name of the policy changed to "Employee Life" and subsequently to "Basic Life." (ECF Nos. 31 at 3, 31-3.) Matson separated from its parent company in 2013. (ECF No. 31-4.)

considered part of Decedent's "current" 2010 policy or whether it should be viewed as an "additional" policy. It also calls into question the extent to which the Divorce Decree can trigger issue preclusion, because the Court cannot "actually litigate" an issue that did not plausibly exist at the time of the litigation.

Because Macaulay Defendants have not established that Basic Life and Supplemental Life are part of a single "policy" as the term has been used over time in the Divorce Action, the Court finds that Macaulay Defendants are not entitled to summary judgment as to the $250,000 in Supplemental Life proceeds.

## IV.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Interpleader Plaintiff Metropolitan Life Insurance Company is dismissed with prejudice from this action, reflecting the order granting Parties' amended stipulation to complete interpleader (ECF No. 46).

It is further ordered that Macaulay Defendants' motion for judicial notice (ECF No. 21) is granted under the terms described in this order.

It is further ordered that Shedd Defendants' request for judicial notice (ECF No. 29) is granted in part as to the exhibited family court orders (ECF Nos. 29-4, 29-5, 29-6, 29-7, 29-8, 29-9, 29-10) and denied as to all other records requested to be noticed (ECF Nos. 29-1, 29-2, 29-3).

It is further ordered that Macaulay Defendants' motion for summary judgment (ECF No. 22) is granted in part as to the $542,000 in proceeds from Decedent's Basic Life policy. Macaulay Defendants are directed to submit documentation of their MetLife claims to the Court and to identify the exact amount of Basic Life proceeds due to each Defendant in order to enable disbursement. Alternatively, Macaulay Defendants may

authorize disbursement to their attorney. The Clerk of Court will then be authorized to release the Basic Life funds. Accrued interest on all proceeds, including both Basic Life and Supplemental Life, will not be distributed until the resolution of this action.

It is further ordered that the motion for summary judgment (ECF No. 22) is denied in part as to the $250,000 in proceeds, plus accrued interest, from Decedent's Supplemental Life policy.

DATED THIS 30th Day of January 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE